Gregory B Collins (#023158)
Eric B. Hull (#023934)
KERCSMAR COLLINS & O'HARA PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile:  (480) 421-1002
gbc@kcofirm.com
ebh@kcofirm.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mickey Schaefer & Associates, LLC d/b/a Tourism Ambassador Institute, an Arizona limited liability company,<br><br>Plaintiffs,<br>v.<br>Tourism Academy Inc., a Florida corporation, Stephen Ekstrom, a Florida resident, and Sheena Works, a Florida resident,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br><br>**(JURY TRIAL DEMANDED)** |

For its Complaint, Plaintiff Mickey Schaefer & Associates, LLC d/b/a Tourism Ambassador Institute® against Tourism Academy, Inc. and its principals Stephen Ekstrom and Sheena Works, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a). This court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §§ 1338(b), and 1367(a).

1

2. This Court has personal jurisdiction over Defendants under the Arizona long-arm statute, Ariz. R. Civ. P. 4.2(a), and the assertion of jurisdiction here is in accordance with the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

3. This Court has personal jurisdiction over Defendants because Defendants have committed acts and/or contributed to and/or induced acts of trademark infringement and unfair competition in the District of Arizona. Defendants have purposefully availed themselves of the privilege of doing business in Arizona, have purposefully directed advertising at and promoted products and services in Arizona, and have purposefully conducted business and directed infringing activities at Arizona, knowing Plaintiff would be harmed by the infringement in Arizona. The effects of those acts have been felt in this district.

4. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2), 1391(c), and 15 U.S.C. § 1125(d).

**PARTIES**

5. Plaintiff Mickey Schaefer & Associates, LLC is an Arizona limited liability company that does business under the name Tourism Ambassador Institute®. The members of Mickey Schaefer & Associates, LLC are all Arizona residents.

6. Defendant Tourism Academy, Inc. is a Florida 501(c)(3).

7. Defendant Stephen Ekstrom is the founder and principal of Defendant Tourism Academy, Inc. Upon information and belief, Plaintiff alleges that each and every tortious act of Defendant Tourism Academy, Inc. was directed by Defendants Stephen Ekstrom and Sheena Works.

8. Defendant Sheena Works is a principal of Defendant Tourism Academy, Inc. Upon information and belief, Plaintiff alleges that each and every tortious act of Defendant Tourism Academy, Inc. was directed by Defendants Stephen Ekstrom and Sheena Works.

## FACTUAL ALLEGATIONS

9. In November 2004, Mickey Schaefer founded Mickey Schaefer & Associates, LLC.

10. Ms. Schaefer has been repeatedly recognized for her work and expertise in the hospitality and tourism industries. She has been named five times to the 25 Most Influential in the Meetings Industry by *Meeting News*. She was named one of the Six Top Industry Leaders by *Smart Meetings*. She was nominated by her peers to become a Fellow of the American Society of Association Executives (ASAE). And she has been inducted into the Hall of Leaders, for the Events Industry Council, which is considered the highest honor in the hospitality and tourism industries. She holds several industry designations, including CAE (Certified Association Executive) and FASAE (Fellow) both from the American Society of Association Executives, as well as CTA (Certified Tourism Ambassador) outlined herein.

11. Relying on Ms. Schaefer's substantial experience, expertise, and personal connections throughout the hospitality and tourism industries, Mickey Schaefer & Associates, LLC quickly became a leader in the market for training of hospitality and tourism professionals.

12. The Tourism Ambassador Institute, LLC and CTA Network, LLC are wholly-owned subsidiaries of Mickey Schaefer & Associates, both of which were formed as Arizona LLCs in March 2008.

13. Mickey Schaefer & Associates does business under the federally registered trademark TOURISM AMBASSADOR INSTITUTE. The TOURISM AMBASSADOR INSITUTE trademark was registered most recently on the principle register as Registration No. 2092186 on January 31, 2012.

14. Plaintiff's use of the TOURISM AMBASSADOR INSTITUTE mark dates to 2006.

15. Tourism Ambassador Institute® is the oversight entity and CTA Network is the administrative entity for the Certified Tourism Ambassador™ (CTA)

3

certification program, which trains and certifies professionals in the hospitality and tourism industry.

16. More than 56,000 hospitality and tourism professionals have become certified since the program's launch in May 2006. There are over 8,000 "Current" status Certified Tourism Ambassadors, with hundreds more in an "Applying" status. There are currently 30 local CTA programs in 20 states. Additional program information and testimonials are included throughout the CTA program official website, CTANetwork.com. The list of CTA programs includes the San Antonio Tourism Ambassador Program, which launched in 2012 and the Anaheim/Orange County Tourism Ambassador Program, which launched in 2008.

17. The Tourism Ambassador Institute® certification program is generally purchased by Convention and Visitors Bureaus (CVBs), Destination Marketing Organizations (DMOs), or Chambers of Commerce across the United States and, formerly, Bermuda.

18. These tourism-related entities then offer certification training to their employees, member/partner area businesses, local government offices, higher education institutions, realtors, hospitals, and others throughout the local community. Now in its 16th year, the proven result of the program is an aligned community that works together to enhance the visitor experience and grow tourism, which translates into more spending at area businesses and an overall enhanced quality of life for residents.

19. The Tourism Ambassador Institute® accredits and licenses the local tourism entity as an Accredited Provider (AP) to administer the certification program on its behalf at the local level.

20. For example, Visit Tucson is a Tourism Ambassador Institute® client, which offers programs to its members in Tucson, Arizona and Southeast Arizona.

21. To uphold the integrity of this certification program, local Accredited Providers agree to adhere to TAI-established accreditation criteria, pay all applicable

annual accreditation fees, and comply with all other requirements for ongoing program quality. This includes an annual review of local program administration, through the annual *Accreditation and Quality Assurance Process*, the objective of which is to maintain uniform standards of quality for the certification program and the integrity of the professional CTA designation industry-wide and internationally.

22. If the Tourism Ambassador Institute® concludes the Accredited Provider has not satisfied standards or other conditions, it will be placed in *Provisional* status and given an opportunity to remedy its non-compliance.

23. In exchange for the established annual accreditation fees, the Tourism Ambassador Institute® provides tools, resources and staffing including, but not limited to, the following: administrative access to a dedicated program management AMS (association management software) system, including a full CRM database of all "Applying", "Current", or "Inactive" CTAs; online enrollment; online renewal of certification; e-communications; customized pre-class and classroom materials and exam; seven-days-per-week support from the International Office, with an average 2-hour response time; and a local 'micro-site' – My CTA Home – for exclusive access to local Freebies & Discounts, CTA Networking Events, Calendar of Events, International CTA directory, and more.

24. Once an individual fully completes the requirements through the Tourism Ambassador Institute® program, which (in this example) is offered through Visit Tucson's *Tucson Tourism Ambassador Program*, that individual becomes a Certified Tourism Ambassador™ and is authorized to use the industry-recognized designation, CTA, behind their name on formal business communications, e-mail signature blocks, social media, and elsewhere.

25. It is common on LinkedIn to see the CTA designation at the end of a person's name, alongside other industry-recognized certifications, such as CDME (Certified Destination Management Executive) or CMP (Certified Meeting Professional).

26. Local universities and community colleges with hospitality/tourism degree programs have offered the certification to their students, with some incorporating the CTA program as part of their formal course catalog. High schools have also used the CTA program to train and certify the next generation of hospitality workers for their local community.

27. Due to the program's longevity since 2006, the prestige of the CTA destinations, and the quality of program, the CTA designation and brand are well known throughout the hospitality and tourism industry.

28. To complete the Certified Tourism Ambassador™ program and become certified, participants must: (a) complete the *Enrollment Form* and Agree to Terms, which includes upholding the standards of the internationally-recognized certification program; (b) complete the pre-class learning requirements, which includes reading the 200-plus page *Pre-Class Reading & Reference Document (Pre-Read)* and completing the pre-class exercises; (c) participate in a 4-hour in-person course or a 2 ½ hour web-based course; and (d) successfully pass an open book exam at the end of the classroom experience.

29. To maintain their certification, professionals must complete the Annual Renewal requirements on a calendar-year basis, which includes reporting a minimum of fifty (50) renewal points of continued learning about their destination in one of five areas: (1) *Attraction Points* (Visiting Area Attractions); (2) *Event Points* (CTA Networking Events, Seminars, Educational Events); (3) *Volunteering Points* (Tourism or Community Volunteering); (4) *Reading Points* (Tourism-related Articles, Websites, Blogs).

30. Plaintiff's Certified Tourism Ambassador™ certification program is the leading program for training hospitality and tourism professionals in the United States.

31. In 2018, Defendant Stephan Ekstrom founded The Tourism Academy, which is a registered 501(c)(3) nonprofit organization. The organization website, TourismAcademy.org, shows content starting in 2021.

32. Upon information and belief, Mr. Ekstrom, along with Sheena Works (who is listed as the Defendant Tourism Academy's Chief Learning Officer), have directed all of the actions of Defendant Tourism Academy alleged below.

33. The Tourism Academy is a direct competitor of the TOURISM AMBASSADOR INSTITUTE®.

34. In just four years, The Tourism Academy website claims that over 154,327 Tourism Professionals and 22,143 Allied Organizations have used The Tourism Academy course offerings in 87 Countries.

35. The Tourism Academy unfairly competes with TOURISM AMBASSADOR INSTITUTE®.

36. For example, in direct infringement of Plaintiff's TOURISM AMBASSADOR INSITUTE® mark and CERTIFIED TOURISM AMBASSADOR™ mark, and in a blatant effort to benefit from the use of Plaintiff's well-established TOURISM AMBASSDOR name in the hospitality and tourism markets, The Tourism Academy markets and sells "CERTIFIED TOURISM AMBASSADOR TRAINING", with "Tourism Ambassador Certification" and "Tourism Ambassador Training" prominently appearing on Plaintiff's website Home page at www.TourismAcademy.org.

37. The Tourism Academy's website has a section entitled, "Collaborate," which proclaims, "Tourism Ambassadors, certified by the nonprofit Tourism Academy...", as well as "Tourism Ambassador Training & Certification", and "...your stakeholders can become certified whenever and wherever...".

38. In an effort to further create confusion in the marketplace, and again in direct infringement of Plaintiff's registered TOURISM AMBASSADOR INSITUTE® mark, The Tourism Academy calls individuals that complete its CERTIFIED TOURISM AMBASSADOR TRAINING: "Tourism Ambassadors."

39. Defendants' website refers to "Tourism Ambassadors" again and again and in over 30 blog posts using the internet tag, "Tourism Ambassador," and using

7

headings such as "Protect Your Reputation With Tourism Ambassadors," "Tourism Ambassadors Humanize Your Brand," "Ambassadors Spread Positive Word of Mouth," "Tourism Ambassadors Help Grow Your Destination."

40. The footer of Defendants' website includes a link to "Tourism Ambassador Training." The link directs to a page that states "Learn About Our Tourism Ambassador Certification Program."

41. Also misleading on Defendant's website and blog posts is the repeated, interchangeable, and erroneous use of the terms "certification," "certify," "certified" and "credentialed." An entry on Defendants' blog, dated July 24, 2021, inaccurately attempts to explain the difference between a certification program and a certificate program. The advertised deliverable upon completion of Defendants' Tourism Ambassador program is a Certificate of Completion, which is not synonymous with certification.

42. In a blatant attempt to create confusion with Plaintiffs' marks, in seven different blog posts, Defendants use the acronym "CTA", specifically: *"Here are just a few of those who are positively impacted by your credentialed tourism ambassadors (CTA)."*

43. Given the Defendants' efforts to palm off their product as Plaintiff's product, it should come as no surprise that a number of Plaintiffs' clients have contacted Plaintiff TOURISM AMBASSADOR INSTITUTE® to express concerns regarding whether Defendants were affiliated with Plaintiff's offerings for "Tourism Ambassador" certifications.

44. Defendant has repeatedly and falsely promoted its "Tourism Ambassador Training." For example, on January 3, 2023, Plaintiff learned that if someone watches one of Defendant's *Business Class* podcasts, they receive an unsolicited email which includes a video promoting "Tourism Ambassador Training," even though the content of the podcast may have focused on an entirely different subject.

45. Plaintiff has discovered that Defendant actively called/solicited several of Plaintiff's clients, touting its ambassador program as being superior to the CTA program. Plaintiff's clients who have stopped doing business with Plaintiff are now using or have used Defendant's programs. These clients include: Lehigh Valley, Pennsylvania, Oklahoma City, Oklahoma, and Baltimore, Maryland.

46. Upon information and belief, and based on the specific nature of Defendants' writings, Defendants inappropriately gained information from past CTA clients about Plaintiffs' business model, which Defendants used to make false or misleading comments on the proprietary curriculum and the administrative procedures of the Certified Tourism Ambassador™ program.

47. Upon information and belief, Defendants plagiarized the CTANetwork.com website content and used variations of this content for the TourismAcademy.org website content and blog posts.

48. One example is in Defendants' August 10, 2022 blog post, which states: *"Those who complete their course work are rewarded by being asked to join special networking events, exhibit previews, volunteer opportunities, etc."* Plaintiffs' website uses similar language to show the benefits of being a CTA.

49. Defendants' website also includes a list of sectors that are involved in the CTA program, which Defendants modified into a list that appeared in multiple blog posts, published as recently as October 12, 2022, with the sector list preceded by the words "…credentialed tourism ambassadors (CTA)."

50. Defendants' willful infringement of Plaintiff's registered trademark and blatant palming off of Defendant's product as Plaintiff's product, allowed each of the clients identified above to make the switch from Plaintiff's product to Defendant's product. Due to Defendant's infringement of Plaintiff's mark, each of these former clients were able to indicate that individuals were still "Ambassadors", despite the fact that these former clients no longer utilized Plaintiff's certification/training products.

51. Indeed, Defendants encourage potential clients to make the switch from Plaintiff's product to Defendant's products, in a comparison page on their website. A copy of that webpage is attached hereto. The comparison appears within a blog post published October 12, 2021, entitled, *"Tourism Ambassador Institute vs. Tourism Academy: Ambassador Training & Certification Compared."*

52. In addition to showing Plaintiff's registered and trademarked logos without permission, the comparison page includes numerous materially false statements regarding TOURISM AMBASSADOR INSTITUTE's Certified Tourism Ambassador™ program.

53. A chart appears, purporting to compare Plaintiff's TOURSIM AMBASSADOR INSTITUE's Certified Tourism Ambassador™ training to Defendant's Tourism Ambassador training, is reprinted below, with the lead: *"Let's talk about how the two providers compare in these areas:"*

| | The Tourism Academy | Tourism Ambassador Institute (TAI) aka CTA Network & The Experience Institute |
|---|---|---|
| Cost/Value | Fixed Pricing | Variable Pricing |
| Ease of Use | Intuitive | Train the Trainer Required |
| Implementation Speed | 8-12 week build out | 12-16 week build PLUS 2–3-week onboarding |
| Cost to License | Fixed Annual Fee | Annual Fee PLUS Per Ambassador Fee |
| Staff Time to Maintain | 1-2 Hours Per Quarter | 6-16 Hours Per Month |
| Instructional Design | Crafted by PhD, MEd and Business Psychologists | Written by Marketing Consultant(s) |
| Technology - Learning Management System | State of the Art Learning Management System (LMS) | n/a |
| In Person Instruction | Optional but not required | Required |
| Accessibility | Meets Requirements of Multiple Learning Styles | Built for those who learn by reading and face-to-face instruction |
| Course Availability | 24/7 | Scheduled Sessions |
| Reporting & Analytics | Comprehensive Real Time Dashboard | Periodic Survey and Research Project Results |
| Customer Support | 24/7 for both ambassadors and instructors | Mon-Fri Business Hours |
| Accreditation or Certification | Verified Online | Manually Issued |

Keresmar Collins & O'Hara PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

54.     The chart above, and the rest of the blog post on which the chart appears, wholly ignores the fact that Plaintiff offers blended learning, including a web-based version of the certification program. Accordingly, contrary to the statements made in the chart above, in-person instruction is not required. Furthermore, contrary to Defendant's chart, Plaintiffs' program is a fixed fee program, with customers/clients being fully aware of the fixed costs of the program at the outset. By omitting any mention of the Plaintiff's web-based offering and comparing Defendant's online program to Plaintiff's in-person program, Defendants trick consumers into purchasing their program over the Plaintiff's program.

55.     Defendants published a separate blog post, dated August 10, 2022, which refers to Plaintiff's clients being "forced" to attend training sessions in person: *"By forcing potential tourism ambassadors to show up at a certain date, time and location..."*

56.     The above-stated chart and the rest of the page also erroneously labels Plaintiff's pricing as "variable" when that pricing is fixed and agreed upon at contract signing with the CTA Accredited Provider.

57.     Furthermore, Defendants mocked the CTA certification and the program's customized 200+-page pre-class reading requirement in a webinar first broadcast in January 2023 titled: *Create an Ambassador Program That Doesn't Suck.* Defendant is recorded at approximately 26 minutes into the webinar describing Plaintiff's course as, *"A 200-page novel that no one reads"* and mocks the curriculum's history section, roughly 23 minutes into the webinar, by saying *"...who stood where on a blade of grass in 1862."* This is a false and misleading statement. TAI's most recent survey of CTAs shows that 67% of CTAs report referring to the document occasionally or regularly to assist visitors or to enhance their knowledge. Further, the robust nature of the curriculum is celebrated by CTA destinations and, thus, encourages high-level stakeholders to become certified. Defendant has also made

false claims by erroneously stating that the CTA program administration is *"...antiquated spreadsheets, manual counts, and subjective observation."*

58. On the above-stated chart and blog post, Defendants falsely claim that Plaintiff's content is written by marketing consultant(s). In fact, the instructional design/curriculum template for the CTA program and the attendant learning objectives were developed by a Ph.D. with a doctorate focused on adult learning and instruction design, with extensive experience in the development and maintenance of certification programs including all of the certification programs (then) offered by the National Association of Realtors®.

59. Plaintiff's curriculum model, upon which all succeeding CTA program content has been created, follows a federally-copyrighted Template Model to ensure consistency of the CTA certification in all destinations internationally. When writing the local, customized portions within the Template Model, each local Accredited Provider assists in identifying the Body of Knowledge for the local CTA program by inviting local experts to participate on a Subject Matter Expert (SME) Panel, which is then written over 6-8 weeks and becomes the aforementioned 200+ page *Pre-Class Reading & Reference Document.*

60. In Plaintiff's program, individuals are granted the CTA designation after successfully completing the classroom requirements and passing a 28-question open book exam. This extensive process, along with the requirements for annual renewal of certification, follow the standards for a well-developed certification program.

61. Irreparable harm to Plaintiff's products and reputation has occurred through Defendants' erroneous claim that the CTA program is not valid certification. Defendants write: *"...[the CTA program] is focused on developing certain skills and knowledge, not adherence to a strict academic learning track. These skills and knowledge do not rise to the stringent academic standards that would necessitate ANSI accreditation and qualification."* In several blog posts, Plaintiff erroneously claims that a certification program must be approved by the American National Standards

Institute (ANSI), specifically: *"At last check, there was no ANSI (American National Standards Institute) classification for Certified Tourism Ambassadors."* Another blog post makes a direct and overt attack on Plaintiff, with the statement: *"...[the CTA program] fails to meet the standards for providing an accredited certification program."*

## COUNT I

### False Advertising – 15 U.S.C. § 1125(a)(1)(B)

62. Plaintiff realleges and incorporates by reference each and every allegation of this Complaint as if fully set forth herein.

63. As alleged above, Defendants have purposefully made false and misleading statements of fact concerning Plaintiff's TOURSIM AMBASSADOR INSTITUE's Certified Tourism Ambassador™ training and certification, including but not limited to the false statements identified above.

64. Defendants' deception is material, in that it is likely to influence the purchasing decision of the public for whom it was intended.

65. Defendants have introduced its false and misleading statements into interstate commerce via marketing and advertising on its own website to customers nationwide, as well as internationally.

66. Plaintiff has been injured as a result of Defendants' false statements.

67. Plaintiff has suffered a commercial injury based upon Defendants' misrepresentations.

68. Plaintiff's injury is competitive, i.e., harmful to Plaintiff's ability to compete.

69. Defendants conduct as alleged is willful and exceptional, such that Plaintiff is entitled to an award of treble damages and its attorneys' fees.

# COUNT II

## (Trademark Infringement Under 15 § 1125(a))

70. Plaintiff incorporates by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

71. Plaintiff is the owner of the federally registered TOURISM AMBASSADOR INSTITUTE® mark.

72. Plaintiffs have used the TOURISM AMBASSADOR INSTITUTE® mark in commerce since at least March 2006.

73. Plaintiff's mark is a valid and subsisting trademark in full force and effect.

74. Defendants' actions constitute trademark infringement under 15 U.S.C. § 1125(a). Defendants' mark is deceptively similar to Plaintiff's trademark and Defendants' use of their mark is creating or increasing the likelihood of confusion between services provided by Plaintiff and Defendants to the detriment of Plaintiff and the public.

75. Defendants' mark is likely to mislead consumers as to the separate origin of Defendants' mark and Plaintiff's mark for similar products and services, and is likely to damage Plaintiff's goodwill and business reputation.

76. The trademark infringement by Defendants is and has been knowing, intentional, and in bad faith.

77. Plaintiff has been, are now, and will be irreparably injured and damaged by such trademark infringement and, unless enjoined by the Court, Plaintiff will suffer further harm to its name, reputation, and goodwill. This harm constitutes injury for which Plaintiff has no adequate remedy at law.

78. Plaintiff is also entitled to an award of statutory damages under 15 U.S.C. § 1117, attorneys' fees, and injunctive relief.

## COUNT III

### (Common Law Trademark Infringement)

79. Plaintiff incorporates by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

80. Plaintiff is the owner of the Certified Tourism Ambassador™ common law mark.

81. Plaintiffs have used the Certified Tourism Ambassador™ in commerce since at least March 2006.

82. Plaintiff's Certified Tourism Ambassador™ is a valid and subsisting trademark in full force and effect.

83. Defendants' actions constitute trademark infringement under Arizona common law in that Defendants' mark is deceptively similar to Plaintiff's trademark/trade name, and Defendants' use of their mark is creating or increasing the likelihood of confusion between services provided by Plaintiff and Defendants to the detriment of Plaintiff and the public.

84. Defendants' mark is likely to mislead consumers as to the separate origin of Defendants' mark and Plaintiff's mark for similar products and services, and is likely to damage Plaintiff's goodwill and business reputation.

85. The trademark infringement by Defendants is and has been knowing, intentional, and in bad faith.

86. Plaintiff has been, are now, and will be irreparably injured and damaged by such trademark infringement and, unless enjoined by the Court, Plaintiff will suffer further harm to its name, reputation, and goodwill. This harm constitutes injury for which Plaintiff has no adequate remedy at law.

# COUNT IV

## (Common Law Unfair Competition)

87. Plaintiff incorporates by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

88. "The common law doctrine of unfair competition is based on principles of equity" and "encompasses several tort theories, such as trademark infringement, false advertising, 'palming off,' and misappropriation." *Fairway Constructors, Inc. v. Ahern,* 193 Ariz. 122, 124 ¶9, 970 P.2d 954, 956 (Ct. App. 1998).

89. Defendants' actions constitute unfair competition under Arizona common law.

90. Defendants' unfair competition is and has been knowing, intentional, and in bad faith.

91. As a direct and proximate result of such conduct, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to Plaintiff's name, business, reputation, and goodwill.

## JURY DEMAND

1. Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief:

A. A preliminary and permanent injunction barring Defendants' infringement of Plaintiff's trademarks;

B. An award of actual damages to compensate Plaintiff for its losses, damages to their business reputation, and/or lost sales and profits caused by Defendants' unlawful conduct;

C. An award in an amount equal to Defendants' profits attributable to their unlawful conduct;

17

D. An award of pre- and post-judgment interest on any ultimate award to the maximum amount permitted by law;

E. For an award of attorneys' fees and costs under all applicable statutes, including, but not limited to, 15 U.S.C. § 1117 and 15 U.S.C. § 1125.

F. All other relief to which Plaintiff is entitled under the circumstances.

RESPECTFULLY SUBMITTED this 15th day of March, 2023.

KERCSMAR COLLINS & O'HARA PLLC

By: *s/ Gregory B. Collins*
Gregory B. Collins
Eric B. Hull
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
*Attorneys for Plaintiffs*