# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mickey Schaefer & Associates, LLC d/b/a Tourism Ambassador Institute, | No. CV-23-00456-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Tourism Academy Inc., Stephen Ekstrom, and Sheena Works, | |
| Defendants, | |
| Tourism Academy Inc., | |
| Counterclaimant | |
| v. | |
| Mickey Schaefer & Associates, LLC d/b/a Tourism Ambassador Institute, | |
| Counterdefendant | |

Pending before the Court is Plaintiff/Counterdefendants' Mickey Schaefer & Associates ("MSA") *Daubert* Motion to Exclude Opinions of Expert William Hartzer that are Outside the Scope of his Expertise. (Doc. 53.) Defendants Tourism Academy Inc. filed a Response (Doc. 63) to which Plaintiff filed a Reply (Doc. 75). After reviewing the parties' arguments and relevant case law, the Court will grant Plaintiff's Motion.

**I.   BACKGROUND**

These motions stem from a dispute surrounding MSA's trademarks and alleged

unfair competition between MSA and Defendants. (Doc. 1.) Plaintiff Shaefer is the owner and founder of Mickey Shaefer and Associates dba Tourism Ambassador Institute, a company focused on the market for training of hospitality and tourism professionals. (Doc. 1 at 3 ¶¶ 9–13.) The MSA umbrella also includes two wholly owned subsidiaries—the Tourism Ambassador Institute, LLC and CTA Network, LLC—which were both formed as Arizona LLCs in 2008. (*Id.* at ¶ 12.) In January 2012, The Tourism Ambassador logo was registered, with use of the mark dating back to 2006. (*Id.* at ¶¶ 13–14.) The Tourism Ambassador Institute certification program is generally utilized by Convention and Visitors Bureaus ("CVB"s) Destination Marketing Organizations (DMOs), or Chambers of Commerce. (*Id.* at 4 ¶ 17.) These entities then offer certification training to their employees and/or other community members. (*Id.* ¶ 18.) The Tourism Ambassador Institute, in exchange for an accreditation fee, accredits and provides certain services and materials for the local tourism entity as an Accredited Provider ("AP") to provide the training program locally. (*Id.* at ¶¶ 19–23.) Once someone completes this training, they are able to put the "CTA" designation—which is well known in the industry—behind their name in business settings and on professional social media sites such as LinkedIn. (*Id.* ¶¶ 24–25; 27)

In 2018, Defendant Stephen Ekstrom founded the Tourism Academy, a registered 501(c)(3), and began adding content to their website in 2021. (*Id.* at 6 ¶ 31.) Tourism Academy is a direct competitor of The Tourism Ambassador Institute. (*Id.* at 7 ¶ 33.) Plaintiff alleges that The Tourism Academy website, mainly through blog posts, used a variety of similar terms as those from The Tourism Ambassador Institute ("CTA," "certification," "credentialed," "tourism ambassadors," and references to "tourism ambassador training, among others) "in a blatant attempt" to create confusion with Plaintiff's marks. (*Id.* at 7 ¶ 39; 8 ¶¶ 40–42.) Additionally, Defendants' website, via a blog post, includes a side-by-side chart outlining the differences between Plaintiff's certification and their own. (*Id.* at 10–11 ¶ 53.) Plaintiff alleges that this chart is not entirely accurate, and that in other places on the website Defendants "mock" Plaintiff's

CTA certification. (*Id.* at 11 ¶ 54; 12 ¶ 57.) Plaintiff further alleges that in addition to Defendants posting falsities about the Tourism Ambassador Institute on their website, Defendants have "solicited several of Plaintiff's clients" who are now using Defendants' services instead. (*Id.* at 9 ¶ 45.)

Plaintiff alleges that all of this has accumulated in "irreparable harm to Plaintiff's products and reputation" and accordingly brings four claims against Defendants: (1) false advertising under 15 U.S.C. § 1125(a)(1)(B); (2) trademark infringement under 15 U.S.C. § 1125(a); (3) common law trademark infringement, and; (4) common law unfair competition. (Doc. 1.) Defendants moved for summary judgment on all four claims. (Doc. 51 at 1.)

Additionally, Defendants allege that after filing this lawsuit, MSA contacted Tourism Academy clients and knowingly made false and disparaging comments against Tourism Academy. (Doc. 15 at 11 ¶ 13–16.) Defendants allege that these statements are public and highly offensive to a reasonable person. (*Id.* at ¶¶ 18–22.) Accordingly, Defendants brought two counterclaims against Plaintiff for defamation and false light. (Doc. 15 at 10–13.) Plaintiff moved for summary judgement on all three of Defendants' counterclaims. (Doc. 54.)

In support of their Motion for summary judgment, and at trial, Defendants seek to utilize the opinions of a digital marketing professional, William Hartzer. (Doc. 53-1.). Plaintiffs bring a *Daubert* motion seeking to preclude his opinions 1 and 4 through 9 as being outside his area of expertise. (Doc. 53.) These opinions are as follows:

> Opinion 1: I don't see evidence of confusion regarding tourism ambassador certificates.
> Opinion 4: In my opinion, the word, keyword, or title "tourism ambassador" is used universally all over the world.
> Opinion 5: In my opinion, the job title "tourism ambassador" is commonly used, and there are tourism ambassador jobs that do not require any sort of certification.
> Opinion 6: In my opinion, based on [sic] number of people who use "tourism ambassador" in their title, job title, in a previous job title, or anywhere else in their profile, without the word "certified" in it, this shows that the word

"tourism ambassador" is commonly used.
Opinion 7: In my opinion, the title or keyword "tourism ambassador" has been used since at least 1997, having been mentioned as job titles and various "tourism ambassador" programmes [sic].
Opinion 8: In my opinion, "tourism ambassador" is used to link to at least 1,000 different websites, indicating that the keyword is commonly used in anchor text of links.
Opinion 9: Based on my research and the search results (no results) at the WIPO, it is my opinion that the Plaintiff has not attempted to defend their mark when it comes to domain names.

(Doc. 63-1 at 23–24.)

## II. LEGAL STANDARD

A party seeking to present an expert's testimony carries the burden establishing that testimony's admissibility. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) govern the admissibility of such testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case

Fed. R. Evid. 702. Expert testimony is admissible only if it is relevant and reliable. *Daubert*, 509 U.S. at 589. Expert testimony is "relevant" if it fits the facts of the case and logically advances "a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms., Inc.* (*Daubert II*), 43 F.3d 1311, 1315 (9th Cir. 1995). Further, the testimony is "reliable" if the expert's opinion is reliably based in the "knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)).

The trial judge acts as the "gatekeeper" of expert witness testimony by engaging in a two-part analysis. *Daubert*, 509 U.S. at 592–93. First, the trial judge must determine that the proposed expert witness testimony is based on scientific, technical, or other

specialized knowledge. *Id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). To assess reliability, courts may consider "(1) whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017). Second, the trial court must ensure that the proposed testimony is relevant— that it "will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592.

The Rule 702 inquiry is flexible and must focus "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. "[I]t is a matter for the finder of fact to decide what weight to accord the expert's testimony" after it has passed the two-part analysis to determine its admissibility. *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998). Opposing experts or tests that the factfinder may be confronted with do not preclude admission but rather go to the weight of the evidence. *Id.* at 1230– 31. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**III.  DISCUSSION**

Plaintiff argues that Hartzer should be precluded from giving certain opinions because he is a digital marketing and search engine optimization expert, *not* a trademark expert. (Doc. 53 at 7.) Defendants, however, argue that Hartzer both has the correct methodology and required expertise to offer all his proposed opinions. (Doc. 63.) The Court agrees with Plaintiff.

As outlined in Hartzer's report, he has over twenty-five years of experience in the technical writing, SEO, web and digital marketing space. (Doc. 53-1 at 4.) In 2016, he took this experience and founded his own consulting firm, Hartzer Consulting LLC, where he focuses "on providing highly technical SEO audits of websites to businesses worldwide as well as providing SEO (search engine optimization) and SEM (search engine marketing)

services" and also providing "domain name consulting services, acquisition brokerage, and forensic domain name research services." (*Id.* at 3–4.) His publication topics include SEO, SEM, and domain names. (*Id.* at 4.) He has spoken at over 100 conferences on these topics. (*Id.*) He has also previously testified as an expert in other trials. (*Id.* at 5.)

Here, MSA's claims are specific to consumer confusion, trademark, and the tourism industry—none of which are in Hartzer's area of study or expertise. As Plaintiff notes, Hartzer admitted that he is not an expert in any marketing that is not digital, and that he is not an expert in trademarks. (Doc. 53 at 7; Doc. 53-2 at 47 ¶¶ 11–13.) He is also not an expert in consumer behavior, including the "likelihood of consumer confusion." (Doc. 53 at 7; Doc. 53-2 at 47 ¶¶ 14–20.) He is also unfamiliar with the tourism industry, noting he did not know what a DMO was. (Doc. 53 at 7; Doc. 53-2 at 52 ¶¶ 13–23.) This makes him unqualified to give opinions related to the tourism industry, consumer behavior, or trademarks. *See In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 628–639 (S.D. W.V. 2013) (finding an expert was qualified to testify on some issues but not others).

Defendants counter by arguing that Hartzer's SEM and SEO background qualifies him to give opinions based on his use of industry methodology, which includes various in-depth internet searches and analysis. (Doc. 63 at 13.) Defendants further argue that Hartzer's opinions should go to a jury as his testimony would "assist the trier of fact" in determining "how the public understands the phrases, how frequently the phrases are used on public internet sites and in domain names, and whether, when the public uses the phrases, they associate the phrases with Plaintiff's business." (*Id.*) Although this could be true, the Court agrees with Plaintiff that because of his lack of expertise in both the consumer behavior and tourism areas, he is unqualified to render such opinions. *In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 960 (D. Ariz. 2007) (cleaned up) ("[I]t is essential that the proposed witness's qualifying training or experience, and resultant specialized knowledge, are sufficiently related to the issues and evidence before the trier of fact [such] that the witness's proposed testimony will be of assistance to the trier of fact.").

As Plaintiff notes, Defendants cannot give Opinion 1 on consumer confusion, because even if Hartzer's searches were conducted with industry methodology, he does not have the requisite background in consumer behavior to interpret such data in the way his opinion interprets it. As Plaintiff further notes, Hartzer lacks both background in tourism and trademark, making him unqualified to give opinions four through nine, which center on the prevalence of the phrase "tourism ambassador" (opinions four, seven and eight), the commonality of the word "tourism ambassador" (opinion 6), and even the specific certification and strength of a mark for the phrase "tourism ambassador" (opinions five and nine). (Doc. 53-1 at 24–25.)

In support of Hartzer's testimony, Defendants argue Plaintiff "entirely ignores Hartzer's methodologies" in asking the Court to disqualify him as an expert. (Doc. 63 at 5.) Although in its Motion Defendants do mainly attack Hartzer's credentials rather than his methodologies, their qualification arguments are still enough to warrant disqualification. Under Fed. R. Evid. 702 and *Daubert*, it is not enough that an "expert" employ reliable principles and methods in reaching an opinion, they first must be qualified "by expert by knowledge, skill, experience, training, or education" to even give such an opinion. Fed. R. Evid. 702; *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969–70.

Because Hartzer does not have the requisite background in consumer behavior, trademark or tourism, the Court will preclude him from testifying on these areas—including opinions one and four through nine in his expert report.[1]

///
///
///
///
///
///

---

[1] Should this information be relevant on any remaining counts, Mr. Hartzer may be able to testify about his factual findings but would be precluded from providing the opinions drawn from those facts.

- 7 -

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Plaintiff/Counterdefendant's *Daubert* Motion to Exclude Opinions of Expert William Hartzer that are Outside the Scope of his Expertise (Doc. 53).

Dated this 26th day of July, 2024.

Honorable Susan M. Brnovich
United States District Judge