# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mickey Schaefer & Associates, LLC d/b/a Tourism Ambassador Institute, | No. CV-23-00456-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Tourism Academy Inc., Stephen Ekstrom, and Sheena Works, | |
| Defendants, | |
| Tourism Academy Inc., | |
| Counterclaimant | |
| v. | |
| Mickey Schaefer & Associates, LLC d/b/a Tourism Ambassador Institute, | |
| Counterdefendant | |

Pending before the Court is Defendants' Tourism Academy Inc.'s Motion for Summary Judgment (Doc. 51) and the required statement of facts (Doc. 52). Plaintiff/Counterdefendant Mickey Schaefer & Associates ("MSA") filed a response (Doc. 66) and a contravening statement of facts (Doc. 68), to which Defendants replied (Doc. 79). Also before the Court is MSA's Motion for Summary Judgment (Doc. 54.) and the required statement of facts (Doc. 55). Defendants filed a response (Doc. 67) and a contravening statement of facts (Doc. 69), to which MSA replied (Doc. 74). After

reviewing the parties' arguments and relevant case law, the Court will grant in part and deny in part Defendants' Motion, and grant in full Plaintiff/Counterdefendant's Motion.

## I.     BACKGROUND

These motions stem from a dispute surrounding MSA's trademarks and alleged unfair competition between MSA and Defendants. (Doc. 1.) Plaintiff Shaefer is the owner and founder of Mickey Shaefer and Associates dba Tourism Ambassador Institute, a company focused on the market for training of hospitality and tourism professionals. (Doc. 1 at 3 ¶¶ 9–13.) The MSA umbrella also includes two wholly owned subsidiaries—the Tourism Ambassador Institute, LLC and CTA Network, LLC—which were both formed as Arizona LLCs in 2008. (*Id.* at ¶ 12.) In January 2012, The Tourism Ambassador logo was registered, with use of the mark dating back to 2006. (*Id.* at ¶¶ 13–14.) The Tourism Ambassador Institute certification program is generally utilized by Convention and Visitors Bureaus ("CVB"s) Destination Marketing Organizations (DMOs), or Chambers of Commerce. (*Id.* at 4 ¶ 17.) These entities then offer certification training to their employees and/or other community members. (*Id.* ¶ 18.) The Tourism Ambassador Institute, in exchange for an accreditation fee, accredits and provides certain services and materials for the local tourism entity as an Accredited Provider ("AP") to provide the training program locally. (*Id.* at ¶¶ 19–23.) Once someone completes this training, they are able to put the "CTA" designation—which is well known in the industry—behind their name in business settings and on professional social media sites such as LinkedIn. (*Id.* ¶¶ 24–25; 27.)

In 2018, Defendant Stephan Ekstrom founded the Tourism Academy, a registered 501(c)(3), and began adding content to their website in 2021. (*Id.* at 6 ¶ 31.) Tourism Academy is a direct competitor of The Tourism Ambassador Institute. (*Id.* at 7 ¶ 33.) The Tourism Academy website, mainly through blog posts, used a variety of similar terms as those from The Tourism Ambassador Institute ("CTA," "certification," "credentialed," "tourism ambassadors," and references to "tourism ambassador training, among others) "in a blatant attempt" to create confusion with Plaintiff's marks. (*Id.* at 7 ¶ 39; 8 ¶¶ 40–42.)

Additionally, Defendants' website, via a blog post, includes a side-by-side chart outlining the differences between Plaintiff's certification and their own. (*Id.* at 10–11 ¶ 53.) Plaintiff alleges that this chart is not entirely accurate, and that in other places on the website Defendants "mock" Plaintiff's CTA certification. (*Id.* at 11¶ 54; 12 ¶ 57.) Plaintiff further alleges that in addition to Defendants posting falsities about the Tourism Ambassador Institute on their website, Defendants have "solicited several of Plaintiff's clients" who are now using Defendants' services instead. (*Id.* at 9 ¶ 45.)

Plaintiff alleges that all of this has accumulated in "irreparable harm to Plaintiff's products and reputation" and accordingly brings four claims against Defendants: (1) false advertising under 15 U.S.C. § 1125(a)(1)(B); (2) trademark infringement under 15 U.S.C. § 1125(a); (3) common law trademark infringement, and; (4) common law unfair competition. (Doc. 1.) Defendants moved for summary judgment on all four claims. (Doc. 51 at 1.)

Further, Defendants alleges that after filing this lawsuit, MSA contacted Tourism Academy clients and knowingly made false and disparaging comments against Tourism Academy. (Doc. 15 at 11¶ 13–16.) Defendants allege that these statements are public and highly offensive to a reasonable person. (*Id.* at ¶¶ 18–22.) Accordingly, Defendants brought two counterclaims against Plaintiff for defamation and false light. (Doc. 15 at 10–13.) Plaintiff moved for summary judgement on Defendants' counterclaims. (Doc. 54.) Both summary judgment motions are now before the Court.

**II.    LEGAL STANDARD**

Summary judgment is appropriate in circumstances where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of a case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes are genuine when the evidence could allow a reasonable jury to find in favor of the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

record" or by "showing that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Additionally, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmovant's favor. *Anderson*, 477 U.S. at 255. Additionally, the Court does not make credibility determinations or weigh the evidence. *Id.* at 253. The determination of whether a given factual dispute requires submission to a jury is guided by the substantive evidentiary standards that apply to the case. *Id.* at 255.

The burden initially falls with the movant to demonstrate the basis for a motion for summary judgment, and they must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. If this initial burden is not met, the nonmovant does not need to produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). However, if the initial burden is met by the movant, then the nonmovant has a burden to establish that there is a genuine issue of material fact. *Id.* at 1103. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Zenith Radio Corp.*, 475 U.S. at 586. Bare assertions alone do not create a material issue of fact, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 247–50 (citations omitted).

### III. DISCUSSION

#### A. Sheena Works

As an initial matter, the Court will address Defendants' motion for summary judgment on behalf of individual Defendant Sheena Works.

"While liability for Lanham Act violations may extend beyond direct participants,

it will only do so where the corporate officer is proven to be a moving, active conscious force behind the corporation's infringement." *Ramada Franchise Sys., Inc. v. Boychuk*, 283 F. Supp. 2d 777, 788 (N.D.N.Y. 2003), *aff'd*, 124 Fed. App'x. 28 (2d Cir. 2005); *see also Urban Accessories, Inc. v. Iron Age Design & Imp.*, LLC, C14-1529JLR, 2015 WL 1510027, at *4 (W.D. Wash. Apr. 1, 2015) (adopting the "moving, active conscious force" standard for personal liability in Lanham Act matters). Defendants allege that Works' involvement with the actions underlying Plaintiff's claims do not meet this standard. (Doc. 51 at 17.) In support of this argument, Defendants note that Works' only duties for Tourism Ambassador relate to creating the educational materials used for trainings. (Doc. 52 at 10.) They further note that she did not create any of Tourism Ambassador's marketing materials (Doc. 52 at 10.) Works also submitted a declaration supporting these facts. (Doc. 52-3.)

Plaintiff however alleges that Works should not be granted summary judgment because she is a co-founder of Tourism Academy, and lists that she "oversee[s] the creation, implementation, and evaluation of all training related materials and initiatives" on her LinkedIn page. (Doc. 66 at 23; Doc. 69 at 9 ¶ 31.) This, however, is not enough to create a fact dispute to demonstrate that she was "a moving, active conscious force" in any of Tourism Academy's allegedly infringing acts. *See Ramada Franchise Sys., Inc.*, 283 F. Supp. 2d at 788. Accordingly, the Court will grant Defendants' Motion as to Sheena Works.

### B. Plaintiff's Count I: False Advertising

First, Plaintiff MSA brings a false advertising claim under 15 U.S.C. § 1125(a)(1)(B) against Defendants. (Doc. 1 at 14.) Generally, MSA alleges that Defendant Tourism Academy made false statements concerning MSA/The Tourism Ambassador Institute on its website. (*Id.*) Defendants allege that the statements made on the Tourism Academy website are not actionable under the statute and move for summary judgment on Plaintiff's claim against them. (Doc. 51 at 4.) The Court disagrees.

In order to sustain a claim for false advertising under 15 U.S.C. § 1125(a)(91)(B), a plaintiff must prove (1) the defendant made a false statement of fact about a product in a

commercial advertisement; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material; (4) the defendant caused the false statement to enter interstate commerce, and; (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). The Court will walk through the contested factors in turn.[1]

### 1. *False Statement*

To satisfy the first element, a plaintiff must show either literal falsity or that an advertisement is likely to mislead or confuse consumers. *See LegalZoom.com Inc. v. Rocket Law. Inc.*, No. CV129942GAFAGRX, 2013 WL 12121303, at *3–4 (C.D. Cal. Oct. 17, 2013) (citing *Southland Sod*, 108 F.3d at 1145.) The Ninth Circuit has directed that "literal falsity" is a question for the jury and summary judgment should not be granted "where a reasonable jury could conclude a statement is not false." *Id.* at *4. However, only "[s]tatements concerning the nature, characteristics, and qualities" of a product are actionable. *OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1011 (D. Ariz. 2017). "Puffery" which "is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable." *Id.*

Under Ninth Circuit precedent, whether a statement is puffery or "a statement of fact" may be resolved as a matter of law. *See Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("[W]e still may determine as a matter of law whether this alleged misrepresentation is a statement of fact, actionable under the Lanham Act, or mere puffery."); *OptoLum, Inc.*, 244 F. Supp. 3d at 1011 ("The determination whether an alleged misrepresentation is a statement of fact or is instead mere puffery is a legal question that may be resolved on a Rule 12(b)(6) motion.") (cleaned up).

Defendants argue the statements Plaintiff uses for the basis of their false advertising

---

[1] Neither party disputes whether Defendants' blog post constitutes a commercial website, so the Court will accept this silence as a concession that the blog post(s) and website are a commercial advertisement for purposes of the false advertisement claim.

- 6 -

claim are only "puffery" and therefore do not meet the "literal falsity" element needed for their claim. (Doc. 51 at 4.) Plaintiff, however, argues that the statements on Defendants' website, specifically those made in various blog posts are false and more than "mere puffery." (Doc. 66 at 17.) Plaintiff argues that Defendants' statement that Plaintiff's content is written by marketing consultants is false, as the programs were developed by a Ph.D. with experience in adult learning. (*Id.* at 15.) Plaintiff also argues the statements that their program is billed at variable pricing and not offered online are also literally false. (*Id.*) Defendants do not address these statements, but instead appear to argue that *all* the statements Plaintiff claims were false were puffery because one of them is—Defendants' statement that the book MSA requires trainees to read has irrelevant information and "no one reads" it. (Doc. 51 at 4.) Even if the Court were to deem this "puffery" Plaintiff's Complaint contains other statements in which there is a reasonable dispute as to their falsity. *See Southland Sod*, 108 F.3d at 1145; *see also ThermoLife Intern., LLC v. Gaspari Nutrition Inc.*, 648 Fed. App'x. 609, 615 (9th Cir. 2016) (unpublished) (applying the rule that where there is a reasonable fact dispute falsity should go to the jury). Accordingly, as to the first element the Court agrees with Plaintiff that there is a reasonable dispute on whether Defendants' website contains false statements about Plaintiff on its website and blog posts.

### 2. *Actual Deception, Materiality, and Injury*

The remaining disputed factors all center on the potential, or actual harm, these statements inflicted on Plaintiff. First, the Court considers whether these statements are material. "A false advertising claim must be material in that it is 'likely to influence the purchasing decision' of consumers." *Clorox Co. v. Reckitt Benckiser Group PLC*, 398 F. Supp. 3d 623, 644 (N.D. Cal. 2019) (quoting *Southland Sod Farms*, 108 F.3d at 1139). Defendants argue that Plaintiff cannot prove these statements were material because they have failed to offer consumer surveys showing consumers were affected by the statements. (*Id.*) In support of this, Defendants point to *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012). Defendants overstate the case. Although *Skydive Arizona* does state

that materiality is "typically proven" through consumer surveys, it then states that "nothing in the Lanham Act, nor under our precedents, requires a plaintiff to use such surveys." *Id.* at 1110. "A plaintiff can also establish materiality by showing that 'the defendants misrepresented an inherent quality or characteristic of the product.'" *See Clorox Co.*, 398 F. Supp. 3d at 644 (quoting *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002)).

Here, although Plaintiff has not provided consumer surveys demonstrating consumer confusion, they do argue that Defendants have misrepresented "an inherent quality or characteristic" of their product–their ambassador training service. *Clorox Co.* 398 F. Supp. 3d at 644. As Plaintiff notes, Defendants' statements concern "the price, the medium, and the creation of [MSA's] program." (Doc. 66 at 18.) The Court agrees with Plaintiff that "it strains reason to believe that these are not inherent qualities" of the program. (*Id.* at 19); *see Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, No. 16-CV-3059-BTM-AGS, 2017 WL 4654644, at *4 (S.D. Cal. Oct. 16, 2017) (finding that an advertisement representing defendant's product as less expensive and more effective than plaintiffs were material, satisfying this element). Accordingly, the Court finds Plaintiff satisfies the materiality element for summary judgment purposes.

Next, the Court must address whether Plaintiff adequately demonstrates injury and actual deception. Where a statement is comparative and demonstrated to be literally false, a plaintiff is entitled to a presumption of actual deception and injury. *U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040–41 (9th Cir. 1986) ("Publication of deliberately false comparative claims gives rise to a presumption of actual deception and reliance."). Accordingly, a plaintiff may still have a claim regarding comparative advertisements where they cannot show specific damage. *Id.* Here, Defendants argue Plaintiff has been unable to demonstrate actual damage or injury as related to their alleged false statements. (Doc. 15 at 6.) Although this may be true as to the non-comparative claims, i.e., those statements mocking certain materials Plaintiff uses in its program, Plaintiff is entitled to a presumption of damages and actual deception for the more material statements Defendants include in

its comparison chart regarding billing, content, and format of its training program. (Doc. 69-1); *see U-Haul Intern., Inc.*, 793 F.2d at 1041. Therefore, the Court finds Plaintiff satisfies the actual deception and damages elements for summary judgment purposes.

Accordingly, because Plaintiff has demonstrated a reasonable dispute as to the facts underlying their False Advertisement claim, the Court will deny Defendants' Motion as to this claim.

### C. Plaintiff's Count II & III: Trademark Infringement

Next, Plaintiff brings two claims for trademark infringement—Count II under the Lanham Act, 15 U.S.C. § 1125(a) for federal trademark infringement and Count III under Arizona common law. (Doc. 1 at 15.) Plaintiff alleges that Defendants' actions constitute trademark infringement of their federally registered trademark on TOURISM AMBASSADOR INSTITUTE®. (*Id.* at 15 ¶¶ 71–74.) Plaintiff additionally argues that Defendants' actions constitute a trademark infringement on their common law Certified Tourism Ambassador mark. (*Id.* at 16 ¶¶ 71–74.) Defendants argue that Plaintiff does not have a federally registered trademark on the "Tourism Ambassador Institute" phrase, but rather only on the logo, and that their claims fail for genericism or alternatively lack of damages. (Doc. 51 at 7–15.) Accordingly, Defendants ask the Court to grant them summary judgment as to both claims. (Doc. 15 at 8.) The Court will address each claim in turn.

To have a valid claim for trademark infringement a plaintiff must show "(1) ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged infringer's use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (cleaned up). "[T]he plaintiff's federal registration of a trademark is prima facie evidence that the plaintiff owns a valid trademark." *2Die4Kourt v. Hillair Cap. Mgmt., LLC*, Case No. SACV 16-01304 JVS(DFMx), 2016 WL 4487895, at *5 (C.D. Cal. Aug. 23, 2016), *aff'd*, 692 F. App'x 366 (9th Cir. 2017).

Here, it is undisputed that Plaintiff has a federally registered trademark over its

service mark/logo, which *also* contains the words "tourism ambassador institute." (Doc. 52 at 2.; Doc. 69 at 2 ¶ 2.) It, however, does not have a federally recognized trademark on the words themselves, and has been denied an application for such marks previously. (*Id.* at 2 ¶ 2; 3 ¶¶ 6–9.) Accordingly, there are two components to Plaintiff's claims for trademark infringement: Defendants' use of their "service mark" on their website for comparative purposes *and* for use of the phrase "tourism ambassador." The Court will address these issues separately.

Plaintiff argues that Defendants' use of their service mark on their website is trademark infringement because they used the registered mark without its permission. (Doc. 66 at 20.) As to this use, Plaintiff argues because it was used for comparative purposes it is not an infringement under the law. (Doc. 79 at 10.) The Court agrees. *See New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992) (noting that "it is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose without using the mark"); *Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1098 (S.D. Cal. 2018) (recognizing the Lanham Act contemplates a fair use exception where a competitor uses a logo to compare their product to a plaintiff's product in their online postings). Accordingly, as to Defendants' use of Plaintiff's service mark for comparative purposes, the Court will grant Defendants' Motion.

Next, Plaintiff claims Defendants' uses of the term "certified tourism ambassador" and "tourism ambassador" also constitute infringement despite being denied a trademark on these terms. Where a Plaintiff does not have a federally registered trademark, it is not entitled to a presumption of a protectable interest. *See Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 775–76 (9th Cir. 1981). To show a protectable interest a plaintiff must show that its mark "has acquired distinctiveness by establishing secondary meaning in the marketplace." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005) (cleaned up). "Generic marks give the general name of the product; they embrace an entire class of products." *Kendall–Jackson Winery,*

*Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir.1998). "Generic marks are not capable of receiving protection because they identify the product, rather than the product's source." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir.2005).

Plaintiff argues they have demonstrated distinctive use because their product, over the last eighteen years, has taken on a specific meaning attributed to their product within the marketplace. (Doc. 66 at 4–5.) In support of this, they note that their clients are required to use the exact "certified tourism ambassador" wording for the name of their local program, and that it is "well known" in the relevant market. (Doc. 66 at 4.) As to distinctiveness, Plaintiff also claims that "no less than ten (10) industry leaders, with unquestioned credentials, in the Destination Marketing Organization (DMO) market have declared under penalty of perjury that TOURISM AMBASSADOR is a trademark in the Destination Marketing Organization (DMO) marketplace and Plaintiffs are known by this trademark." (*Id.*)

Alternatively, Defendants argue the "tourism ambassador" wording is highly generic, as evidenced by the USPTO consistently requiring MSA disclaim any rights to this wording. (Doc. 52 at 2.) They further argue that there are several other unaffiliated websites that use this phrase, which is also noted by the USPTO. (*Id.* at 3 ¶ 9.) Defendants attach some of these and other uses of the phrase to their statement of facts.[2] (Doc. 52-2.) Plaintiff argues that this is not enough to grant summary judgment as there is a reasonable issue of fact on whether the mark is distinctive or generic that should be a question for the jury. (Doc. 66 at 5); *see Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 840 (9th Cir. 2001) ("Whether a mark is generic is a question of fact."). Although this is true, the Court finds that Plaintiff does not present any "significantly probative" evidence supporting that the "tourism ambassador" phrasing is not generic. *See Anderson*,

---

[2] Initially Defendants also presented expert opinions in support of their Motion. As the Court granted Plaintiff's *Daubert* motion (Doc. 81.) as to this expert these opinions were not considered in granting summary judgment as to the trademark claims. However, as explained above the Court finds Defendants have enough other evidence to still warrant summary judgment.

- 11 -

477 U.S. at 247–50.  The Court agrees with Defendants that Plaintiff does not demonstrate ownership over the "tourism academy" phrasing and accordingly will grant summary judgment as to their federal statutory trademark claim.

Claims for trademark infringement under Arizona common law are analyzed under the same framework as those brought under the Lanham Act.  *See AAA Alarm & Sec. Inc. v. A3 Smart Home LP*, No. CV-21-00321-PHX-GMS, 2021 WL 3857417, at *2 (D. Ariz. Aug. 30, 2021) ("Courts . . . address Arizona common law trademark claims under the framework of federal law.").  In other words, to have a claim for common law trademark infringement, a plaintiff still must show ownership of the mark and a likelihood for confusion.  *See Lerner & Rowe PC v. Brown Engstrand & Shelly LLC*, 684 F. Supp. 3d 953, 955–56 (D. Ariz. 2023).  Because there is no protected trademark interest, as explained above, the Court will also grant Defendants' Motion as to Plaintiff's common law trademark claim.

### D. Plaintiff's Count IV: Common Law Unfair Competition

Next, Plaintiff brings a claim for unfair competition under Arizona common law.  (Doc. 1 at 17.)  Defendants argue this claim should be dismissed on summary judgment because Plaintiff has failed to show damages, a necessary element of an unfair competition claim.  (Doc. 51 at 16.)  Plaintiff disputes this point and argues that because there is a dispute of material fact surrounding this claim summary judgment is precluded.  (Doc. 66 at 23.)  The Court agrees.

"In Arizona, the common law doctrine of unfair competition 'encompasses several tort theories, such as trademark infringement, false advertising, palming off, and misappropriation.'"  *ACT Grp. Inc. v. Hamlin*, No. CV-12-567-PHX-GMS, 2012 WL 2976724, at *6 (D. Ariz. July 20, 2012) (quoting *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct. App. 1998).  "The universal test [for unfair competition] is whether the public is likely to be confused."  *Doe v. Arizona Hosp. & Healthcare Ass'n*, CV07–1292–PHX–SRB, 2009 WL 1423378, at *11 (D. Ariz. Mar. 19, 2009) (quoting *Boice v. Stevenson*, 187 P.2d 648, 653 (Ariz. 1947)); *see also Skydive Arizona, Inc. v. Hogue*, 360

P.3d 153, 162 (Ariz. Ct. App. 2015) (cleaned up) ("[T]he ultimate question is always whether trade is being unfairly diverted, and whether the public is being cheated into the purchase of something which it is not in fact getting; the courts interfere solely to prevent deception.").

Because the Court did not grant summary judgment as to Plaintiff's false advertising claim and the unfair competition claim stems from allegations of consumer confusion relating to said claim, it will not grant summary judgment as to this claim either.

### E. Defendants' Count I and II: Defamation and False Light

Defendants bring counterclaims against Plaintiff both for defamation and for false light.[3] (Doc. 15 at 11.) Broadly, Defendants allege that Plaintiff knowingly or recklessly communicated misleading statements about them in the form of an email sent to Tourism Academy's current and potential clients which discussed Plaintiff's lawsuit against Tourism Academy. (*Id.*; Doc. 67 at 2.) Defendants allege that this, and the actions surrounding it, are defamatory and paint Defendant in a false light. (Doc. 15 at 11.) Plaintiff alternatively argues the Court should grant them summary judgment as to these claims because (1) Plaintiff's speech was not anything without substantial truth; and (2) the speech was not "publicized" as required to sustain a false light claim. (Doc. 54 at 9 – 11.) Because these claims are based on the same allegations the Court will handle them congruently. Plaintiff also argue that even without getting into the merits of Defendants' defamation and false light claims, it should be granted summary judgment as Defendants fail to provide evidence of damages. (Doc. 74 at 2.) The Court agrees.

To sustain a defamation claim under Arizona law a plaintiff must present evidence "(1) that the defendant made a false statement; (2) that the statement was published or communicated to someone other than plaintiff; and (3) that the statement tends to harm plaintiff's reputation." *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1061 (D. Ariz. 2012). The statement at issue must have been an "assertion of objective fact." *Yetman v. English*,

---

[3] Initially Defendants also brought a claim for tortious interference, however Defendants noted at oral argument and in their Response (Doc. 67 at 1) that they are no longer pursuing this claim. Accordingly, the Court will not analyze this claim here.

- 13 -

811 P.2d 323, 328 (1991). Further, the statement must be "susceptible of being proved true or false." *Pinal Cnty. v. Cooper*, 360 P.3d 142, 147 (Ariz. Ct. App. 2015).

Under Arizona law, "[a] defendant is not liable in a false light case unless the publication places the plaintiff in a false light highly offensive to a reasonable person." *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 786 (Ariz. 1989)). A false light claim depends on "a major misrepresentation of [the plaintiff's] character, history, activities or beliefs, not merely minor or unimportant inaccuracies." *Id.* at 787 (cleaned up). When looking at both the substantial truth doctrine for defamation and the major misrepresentation for false light, a court should consider the whole context of the speech, not just one portion or a singular quote. *See Lundin v. Discovery Commc'ns. Inc.*, 352 F. Supp. 3d 949, 961 (D. Ariz. 2018); *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 515 (1991) (noting "an exact quotation out of context can distort meaning, although the speaker did use each reported word").

Where a statement is defamatory per se a claimant does not need to show damages and is instead entitled to a presumption of "general damages." *See FAA v. Cooper*, 566 U.S. 284, 296–298 (2012); *C. Arizona Light & Power Co. v. Akers*, 46 P.2d 126, 133 (Ariz. 1935) ("It is not necessary to either allege or prove special damages when the publication is libelous per se."). Consequently, where a statement is not defamatory *per se* a claimant must provide evidence of special damages. *See* Restatement (Second) of Torts § 575 (1977); *Akers*, 46 P.2d at 133. For a statement to be defamatory per se it must if it impute to the other a criminal offense, a loathsome disease, a matter incompatible with business, or serious sexual misconduct. *See* Restatement (Second) of Torts § 570 (1977).

Plaintiff argues that their allegedly defamatory statement does not meet any of these criteria so to make it defamatory per se and therefore subject to only a general damages showing. (Doc. 74 at 3.) The Court agrees. Here, Plaintiff's statement to clients that they brought civil charges against Defendants does not impute criminal wrongdoing. Nor is it the type of matter incompatible with business. To qualify for this form of per se defamation it needs to be the kind of conduct that would "adversely affect his fitness for the proper

conduct of his lawful business, trade or profession." Restatement (Second) of Torts § 573 (1977). Plaintiff's statement that Defendants infringed on the Tourism Ambassador Institute's trademark and misled consumers does not bring into question Defendants' ability to run their tourism training business. Therefore, the Court finds Plaintiff's statements are not per se defamatory, which requires Defendants to offer evidence supporting special damages. Restatement (Second) of Torts § 575 cmt. b (1977) ("Special harm . . . is the loss of something having economic or pecuniary value.").

As to damages, the only evidence that Defendants present is its own disclosure statement. (Doc. 68 at 3 ¶ 13.) This is not enough to support special damages to overcome a motion for summary judgment. Accordingly, because Defendants have failed to present evidence of special damages, the Court will grant Plaintiff's motion for summary judgment as to both Defendants' defamation and false light claims.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED granting in part** and **denying in part** Defendants' Tourism Academy Inc.'s Motion for Summary Judgment (Doc. 51).

**IT IS FURTHER ORDERED granting** summary judgment in favor of Defendants on Plaintiff's trademark infringement claims (Count II and III).

**IT IS FURTHER ORDERED granting** summary judgment in favor of Defendants on Plaintiff's claims against Sheena Works.

**IT IS FURTHER ORDERED denying** summary judgment on Plaintiff's claims for false advertising and unfair competition (Count I and IV).

**IT IS FURTHER ORDERED granting** Plaintiff/Counterdefendant's Motion for Summary Judgment (Doc. 54).

Dated this 29th day of July, 2024.

Honorable Susan M. Brnovich
United States District Judge